HEIBERG et al. v. HASLER.
Civil Action No. 818.

District Court, E. D. New York.
July 1, 1942.

See, also, 1 F.R.D. ·735; 1 F.R.D. 737.

Jules Chopak and Harry S. Austin, both of New York City (Richard J. Cronan, of New York City, of counsel), for plaintiffs.

Edward M. Fuller, of New York City, for defendant.

BYERS, District Judge.

This is the renewal or continuation of a motion for summary judgment made by defendant, which was discussed in a memorandum of this Court dated March 19, 1941.

On April 5, 1941, an order was made appointing a Special Master to take testimony and report his findings to the Court as to the state of the law of the Republic of France as it existed on July 23, 1937, when the first-named plaintiff was injured in that country.

It is common ground that the plaintiff is required to demonstrate a cause of action under French law.

A Report of the Special Master was filed, dated February 9, 1942, which states:

"* * * as of July 22, 1937 the plaintiff Gigg Heiberg was entitled to avail herself of the provisions of the French Workmen's Compensation Act (Law of 9th of April (1898), as amended). I further find that the liability of the defendant pursuant to the French Workmen's Compensation Act is exclusive and in place of any other liability whatsoever and more specifically that the plaintiffs are not entitled to recover from the defendant according to the common law of the Republic of France existing on July 22nd, 1937."

In terms, there is no motion now pending to confirm the Report of the Special Master, although this motion could not be granted unless the Court were persuaded to the same extent that it would be if a motion to confirm had been made and granted.

The first-named plaintiff had been in the employ of the defendant as a housemaid, when the latter was in Florida; some time

in the Spring of 1937 the defendant came to New York, bringing the said plaintiff with her; finding it necessary to employ a lady's maid or companion, a new employment was entered into in this state, whereby said plaintiff undertook to perform duties in the latter capacity. Thereafter the defendant took the plaintiff with her to Europe, and on July 23rd the defendant's automobile, which was driven by a chauffeur employed by her, was en route from Dieppe to Deauville, France; the defendant and the said plaintiff were riding in the back seat, and in a memorandum the Master states, in effect, that the said plaintiff was then functioning as the defendant's lady's maid. The car was driven into collision, for which the defendant was held liable in local criminal litigation.

Under these facts, it would seem that the said plaintiff had apparent cause to institute this cause against her employer.

The Master has concluded, after taking voluminous testimony and hearing expert witnesses pro and con, that the only right of recovery possessed by the plaintiff is that accorded to her by the French Workmen's Compensation Act, which applies to a domestic servant, not a citizen or resident of France, who was injured in the course of her employment, although the defendant employer was not a citizen or resident of France.

The said Report and memorandum are to the effect that the said plaintiff has no greater rights than she would have had in the event of her being a citizen or resident of France, in the employ of a defendant of the same status.

Apparently the rights which an injured person, being a citizen of France, would possess against her employer under the common law of France were superseded by the French Workmen's Compensation Act, the applicable sections of which are quoted and commented upon as follows:

"Art. 2 (Law of March 22, 1902): 'The workers and employees designated in the preceding article may not avail themselves of any other provisions than those within this Act for accidents occurring to them during their work.'

"Article 7 (1st paragraph) says:

" 'Art. 7—Independently of the action resulting from this law, the injured or his representatives retains against those responsible for the accident, other than the employer or his workers and agents, the right to recover damages in accordance with the regulations of the common law.'

"The coverage of the law of April 9, 1898 was extended to domestic help, household workers, by the law of August 2, 1923."

It will be seen that, according to the views of the Special Master, it necessarily follows that the said plaintiff, who entered into her new employment in the State of New York some months prior to accompanying the defendant to France, is deemed to have forfeited the right of recovery which otherwise she would have had as against her employer, if the accident had happened in the State of New York; this attributes to the then sovereignty of France the capacity not only to create, in behalf of those visiting that country, the rights against an employer which existed in behalf of French citizens, but to subtract a right which existed in her favor, arising in connection with her employment in this country; namely, the right to recover against her employer for personal injuries occasioned by the employer's negligence.

This necessarily imputes to the then French Republic a power and authority which could be judicially acknowledged in the courts of this country only in obedience to the clear and unequivocal language of a treaty between the United States and France. No such treaty has been cited.

To justify the statement that the French statute applies to foreign workmen, the following provisions are quoted in the Special Master's memorandum:

"Alien workmen who terminate residence in French territory shall receive as complete indemnity a sum equal to three times the annuity which had been allowed them.

"The same shall apply to their alien beneficiaries terminating residence in French territory, though the total may not, however, exceed the current value of the annuity as determined by the schedule provided in article 28.

"Foreign representatives of an alien worker shall not receive any indemnity if at the time of the accident they did not reside in French territory.

"The provisions of the three paragraphs above may, however, be modified by treaties within the limits provided in this article, for aliens whose country of origin will guarantee reciprocal privileges to our nationals."

The memorandum states:

"Also, decisions of French courts and opinions of text writers apply the French Workmen's Compensation Act to foreign workers or employees:

"Court of Cassation, November 16, 1903, Vve Giovale vs. Fougerolles (Defendant's Exhibit No. 3.)"

A French commentator is quoted to the effect that the foregoing sections of the statute are regarded as indicating a public policy comparable to the laws touching public safety, the police, etc., and that the statute is applicable to foreign workers who have even a temporary occupation in France, even though not residents.

It was argued for the plaintiff that the French Workmen's Compensation Act would not apply in any case, because no foreigner's card of identity by or for her had been procured; to destroy the efficacy of that contention regulatory circulars were quoted from the Ministry of Labor (February 6, 1927), and from the Ministry of Foreign Affairs (February 15, 1927), and from the Ministry of the Interior (July 23, 1929), to the general effect that no identification card is required when a foreigner is staying less than two months; such was the case here. The second reference above-noted is as follows:

"The preceding provisions are not applicable to domestic servants, governesses or nurses in the service of foreigners going themselves to France."

█ It is not a cause for wonder that there seem to be no decisions of the Court of Cassation, passing upon the points presented in this record, because a non-resident employee temporarily sojourning in France—particularly one coming from the United States—would not be expected to seek redress under the Compensation Law of France, and the administrative pronouncements touching the non-necessity for procuring the identity card can scarcely be accorded the status of judicial determination to the effect that a person in the position of this plaintiff has forfeited the rights which the law of this country conferred upon her when she entered the defendant's employ.

█ As the philosophy of the French Workmen's Compensation Act is presently understood, it is the same as our own; namely, it is a measure for the economic protection of workers without putting them to the trouble or expense of establishing a cause of action in negligence in order to secure compensation for personal injuries suffered during the course of employment, and it may well be that it was a competent exercise of sovereign power for the Republic of France to deprive its own workers, whether native or foreign, of the common law (if that is what it was) right of recovery for personal injuries suffered during the course of employment, as the price for such security. It does not seem to follow that it was a competent exercise of the sovereign power of the same nation, to undertake to provide by statutory enactment or administrative fiat, that this foreign employee, entering the territory of France with her employer and in the latter's service, must be deemed to have surrendered rights which were personal to her and which arose by reason of entering into the employ, while in the United States, of a citizen of that country.

In the absence of compelling reason, it is presently found impossible to accept the view that an employee who becomes such under our scale of compensation must be held to have subjected herself to an alien and different scale, by the fortuitous circumstance that her employer decided to maintain the employment relationship temporarily in a foreign country, and the employee by her conduct acquiesced in a migratory type of service.

Section 7 of the Employers' Liability Law of the State of New York, Consol. Laws, c. 74, expressly retains to an employee a right of action for negligence against an employer, and I venture to believe that the right so recognized by the law of this State has not been surrendered by the said plaintiff.

For these reasons, the motion for summary judgment made by the defendant will be denied.

The views herein expressed may not be acceptable to the trial Judge when this cause is reached on the calendar, and nothing which has been written is intended to circumscribe him in respect of the Report of the Special Master and the conclusion therein stated; the present purpose is merely to indicate that the question of fact necessarily presented by the pleadings, as to what the applicable law of France was on July 23, 1937, is deemed to be still before the Court and, in that connection, the Report of the Special Master may or may not be deemed to be helpful.

Motion denied. Settle order.